## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NARAYAN RAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 8014 |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Abbott Laboratories' (Abbott)
motion to dismiss Counts I, III and IV of the first amended complaint, and Plaintiff
Narayan Rao's (Rao) motion to dismiss Abbott's counterclaim and to strike Abbott's
affirmative defenses and answer. For the reasons stated below, Abbott's motion is
granted, and Rao's motion is granted in part and denied in part.

## BACKGROUND

Rao alleges that he is a regulatory affairs professional in the pharmaceutical
industry with twenty years of experience. In early February 2008, Rao allegedly
interviewed for a position with Abbott. During Rao's interview (Interview),
Abbott's Senior Director of Regulatory Affairs, Peter DiRoma (DiRoma), allegedly

1

told Rao that if he accepted Abbott's offer of employment, Rao would be the director in charge of developing the regulatory strategy to bring a high profile drug (Drug) to market. DiRoma also allegedly represented to Rao that the Drug was Abbott's top priority and that the Drug was in accelerated approval with the United States Food and Drug Administration (FDA).

Rao alleges that on or around February 21, 2008, Abbott offered Rao a position as Director of Regulatory Affairs. Rao alleges that he relied upon the oral representations that DiRoma made during the Interview, accepted the position with Abbott, and resigned his position with another employer. Rao then allegedly relocated to the Chicago area and began working at Abbott on March 31, 2008. Shortly thereafter, Rao allegedly learned that, contrary to DiRoma's alleged representations, the Drug was not in accelerated approval with the FDA, and that in February of 2008, the FDA had actually placed a partial clinical hold on the Drug.

Rao additionally alleges that, contrary to DiRoma's alleged description of the position, Abbott requested that Rao follow a pre-determined strategy with respect to gaining FDA approval of the Drug. Rao allegedly reviewed the correspondence between the FDA and Abbott relating to the Drug, and requested that Abbott revise its regulatory strategy with respect to the Drug. In addition, Rao allegedly raised several concerns with DiRoma and Gary Gordon (Gordon), Abbott's Vice President of the Clinical Department, relating to Abbott's testing of the Drug. Rao alleges that in spite of his concerns and recommendations, Abbott refused to consider a new regulatory strategy, and DiRoma allegedly prepared a briefing package for the FDA

advocating accelerated approval of the Drug.

On July 15, 2008, Rao allegedly participated in a meeting with DiRoma, Gordon, and FDA officials, which was allegedly led by DiRoma after Rao allegedly refused to go along with Abbott's desired strategy. The FDA allegedly rejected Abbott's request for accelerated approval and indicated that more safety studies were required before the Drug would be approved by the FDA. DiRoma and Gordon were allegedly angered by Rao's refusal to advocate for accelerated approval of the Drug with the FDA. On July 18, 2008, Rao was allegedly placed on a performance improvement plan. Rao allegedly refused to sign the performance improvement plan, and on August 18, 2008, Abbott allegedly terminated Rao's employment. Rao includes in the first amended complaint a fraudulent misrepresentation claim (Count I), a retaliatory discharge claim (Count II), a breach of contract claim (Count III), and a promissory estoppel claim (Count IV). Abbott now moves to dismiss Count I, Count III, and Count IV of the first amended complaint.

In addition, Abbott filed a counterclaim against Rao. In its counterclaim, Abbott alleges that Abbott offered Rao the position as Director of Regulatory Affairs through an offer letter dated February 21, 2008 (Offer Letter). Abbott also alleges that Rao signed the Offer Letter on February 21, 2008, accepting Abbott's offer of employment and the terms of the Offer Letter. The Offer Letter allegedly provided that Rao would receive certain benefits from Abbott, including a one-time bonus payment (Bonus) and reimbursement of relocation expenses incurred by Rao (Reimbursement). Under the terms of the Offer Letter, Rao was allegedly required to

pay back a certain portion of the Bonus if he did not remain employed by Abbott for at least twelve months, and Rao was allegedly required to pay back the Reimbursement if he did not remain employed by Abbott for at least twenty-four months after relocating.  In addition, Rao was allegedly required to pay any attorneys' fees and costs incurred by Abbott in collecting any money due under the Offer Letter and another employment agreement (Employment Agreement) Rao also signed.  Although Rao was allegedly terminated less than a year after he became employed by Abbott, Rao has allegedly refused to repay any portion of the Bonus, the Reimbursement, or the attorneys' fees and costs that Abbott has spent trying to collect such amounts from Rao.  In its counterclaim, Abbott has brought breach of contract claims against Rao.  Rao now moves to dismiss the counterclaim brought against him, and to strike Abbott's affirmative defenses and answer to the first amended complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint.  *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).  A plaintiff is required to include allegations in the complaint that "plausibly

suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The burden of proof in

regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored since they usually "disserve the interest of judicial economy." *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007); *See also Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)(referring to the "general rule that motions to strike are disfavored . . . because motions to strike potentially serve only to delay").

## DISCUSSION

I.  Abbott's Motion to Dismiss

Abbott moves to dismiss the fraudulent misrepresentation claim (Count I), the breach of contract claim (Count III), and the promissory estoppel claim (Count IV). In support of its motion, Abbott argues that with respect to such counts, Rao has failed to state a claim based on the integration clause (Integration Clause) present in the Offer Letter. The Integration Clause provides the following:

> By signing this letter in the space below, you are acknowledging that you have read and understood this letter and the enclosures, you are agreeing to and accepting the terms of the letter and the enclosed Employment Agreement, and you are not relying on any other representations made by Abbott or its

representatives about your employment.  Together with your Employment Agreement, this offer letter is the entire agreement between you and Abbott.

(D Memo. Ex. A).  The Offer Letter further provides:

By signing this letter in the space below, you acknowledge that you have received and read this letter and all the enclosures hereto, and you further acknowledge your acceptance of these terms.

(D Memo. Ex. A).


A.  Consideration of the Offer Letter

Rao argues that the court should not consider the Offer Letter in ruling on the instant motion.  Pursuant to Federal Rule of Civil Procedure 12(d) (Rule 12(d)), if the court considers matters outside the pleadings presented in a motion to dismiss brought pursuant to Rule 12(b), the motion "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d). However, documents "are not 'matters outside the pleadings' within the meaning of Rule 12(d) if [they are] documents to which the Complaint had referred, [that are] concededly authentic, [and] central to the plaintiffs' claim."  *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012)(quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)).  The court may thus consider such documents when ruling on a Rule 12(b)(6) motion without converting the motion into a motion for summary judgment.  *Id.*; *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)(stating that "the incorporation-by-reference

doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment"); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002)(stating that "the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss").

Rao concedes that the Offer Letter attached to Abbott's motion to dismiss is authentic, (P Resp. 1), but argues that the Offer Letter is not referenced in the first amended complaint. It is true that Rao does not explicitly reference the Offer Letter in the first amended complaint. However, Rao alleges that "on or about February 21, 2008, Abbott offered [Rao] the position of Director of Regulatory Affairs," and that he then "accepted Abbott's employment offer." (A Compl. Par. 35-36). The Offer Letter was clearly the mechanism by which Abbott offered employment to Rao and the mechanism by which Rao accepted Abbott's offer of employment. Rao's failure to explicitly mention the Offer Letter cannot be used to thwart the incorporation-by-reference doctrine, which "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films*, 682 F.3d at 690 (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)); *see also Minch v. City of Chicago*, 486 F.3d 294, 300 (7th Cir. 2007)(finding that a plaintiff's claim "rest[ed] on the terms" of an agreement, even though "the complaint . . . neither quoted from nor referred to the [agreement]"); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir.

2002)(holding that even though it was not explicitly referenced in the complaint, a district court was permitted to consider an agreement in ruling on a motion to dismiss, since it was "impossible to render the necessary adjudication without reference to" the agreement). Thus, Rao's failure to explicitly reference the Offer Letter in the first amended complaint is not dispositive on the issue of whether the court may consider the Offer Letter in ruling on the instant motion.

Rao also argues that the Offer Letter should not be considered because it is not central to his claims. In support of his argument, Rao contends that his breach of contract claim is based on an oral contract between the parties. A valid contract between parties exists only if there is "an offer, an acceptance, and consideration." *Talbert v. Home Sav. of America, F.A.*, 638 N.E.2d 354, 357 (Ill. App. Ct. 1994) (citation omitted). The Seventh Circuit has stated that "[i]n Illinois, the 'test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012)(also stating that "when 'some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer'")(citations omitted). In the instant action, Rao does not allege any facts to plausibly suggest that the oral representations allegedly made by DiRoma on February 4, 2008, constituted an offer by Abbott, not does Rao allege any facts to plausibly suggest that Abbott extended an offer to Rao any time prior to February 21, 2008, when Rao received the Offer Letter. In fact, Rao specifically alleges that Abbott offered Rao employment on or around February 21, 2008, and

then that Rao "accepted Abbott's employment offer." (A Compl. Par. 35-36). Based upon the above, the oral representations allegedly made by DiRoma to Rao on February 4, 2008, cannot be construed as an oral contract between Rao and Abbott. In addition, it is necessary to reference to the Offer Letter in order to adjudicate the claims brought by Rao in Counts I, III, and IV of the first amended complaint. Based upon the above, the Offer Letter is central to the claims asserted by Rao in Counts I, III, and IV.

The court notes that Rao also argues that the Offer Letter relates solely to Abbott's affirmative defenses, and that Rao is not required to plead around affirmative defenses. (P Resp. 2). However, even if Abbott's motion to dismiss presents affirmative defenses to Rao's claims, and thus should have been brought pursuant to Federal Rule of Civil Procedure 12(c) instead of Rule 12(b)(6), the court's analysis remains the same with respect to whether the Offer Letter may be considered by the court in ruling on the instant motion. *See e.g., Yassan v. J.P. Morgan Chase and Co.,* 708 F.3d 963, 975-76 (7th Cir. 2013). As discussed above, the Offer Letter is authentic, the Offer Letter is implicitly referenced in the first amended complaint, and the Offer Letter is central to Rao's claims. Therefore, the court may consider the Offer Letter in ruling on the instant motion without converting the motion into a motion for summary judgment.

### B. Need for Discovery and a Full Evidentiary Hearing

Rao argues that even if the court decides the Offer Letter can be considered,

discovery should be taken so that a full evidentiary record is developed. In considering the Offer Letter, the court "can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 2012 WL 1442280, at *2 (7th Cir. 2013)(citations omitted). As discussed above, based on the Integration Clause contained in the Offer Letter, Rao agreed that he was "not relying on any other representations made by Abbott or its representatives about [his] employment," and that the Offer Letter and Employment Agreement represented "the entire agreement" between the parties. (D Memo. Ex. A). Such terms are unambiguous. Discovery and a full evidentiary record are not necessary for the court to interpret the Offer Letter or make determinations regarding its enforceability.

Rao argues that the Offer Letter may not be enforceable by highlighting the issues that Rao has raised while defending himself in a lawsuit filed against him by Abbott in Delaware (Delaware Action). However, the Delaware Action relates to issues that are completely separate from the issues raised in Rao's first amended complaint and Abbott's motion to dismiss Counts I, III, and IV. Further, the Delaware Action relates to many agreements that are not before this court and do not relate to Counts I, III, and IV of the first amended complaint. The oral representations that DiRoma allegedly made to Rao on February 4, 2008, form the sole basis of Rao's claims in Counts I, III, and IV of the first amended complaint. Thus, in ruling on the instant motion, the court's inquiry is limited to what effect, if any, the Integration Clause has on such representations. In ruling on Abbott's

motion to dismiss Counts I, III, and IV, no other employment-related issues are before this court, and the mere fact that Rao has raised certain defenses in the Delaware Action does not persuade this court that discovery and a full evidentiary record are necessary to resolve the claims asserted by Rao in Counts I, III, and IV.

Rao also suggests that the Offer Letter may be unenforceable because it was not labeled as an "Agreement." According to Rao, the lack of such a title suggests that there was no intent and mutual assent. As discussed above, the Offer Letter specifically states that the Offer Letter is one of two documents constituting the entire agreement between the parties. In addition, by signing the Offer Letter, Rao explicitly acknowledged his acceptance of all of the terms contained in the Offer Letter. Given the explicit language of the Offer Letter, the court finds unavailing Rao's argument that there may not have been intent and mutual assent between the parties with respect to the Offer Letter.

In addition, Rao argues that discovery and a fully evidentiary record is necessary because certain other agreements relating to Rao's employment may affect the terms of the Offer Letter. However, the other agreements identified by Rao all relate to various benefits that Rao received in connection to Rao's employment with Abbott. Rao himself has or should have knowledge regarding such agreements, and there is absolutely no legitimate indication that the terms of any such agreements negate the Integration Clause at issue in this case. Further, to the extent that Rao suggests that some yet unidentified agreement may exist between the parties that would give new effect to the oral representations allegedly made by DiRoma on

February 4, 2008, Rao is in a position to know of, and therefore plead the existence of, such an alleged agreement. Rao's claims in this case cannot survive solely to provide Rao the opportunity to discover the existence of some mythical document, previously unknown to Rao, that might revive his claims. To permit Rao to continue to litigate the claims he asserts in Counts I, III, and IV of the first amended complaint would defeat the entire purpose behind the Integration Clause. Based on the above, the court finds that discovery and a full evidentiary record is not necessary to the resolution of the claims brought in Counts I, III, and IV.

C.  Fraudulent Misrepresentation Claim (Count I)

Rao argues that the Integration Clause does not, as a matter of law, defeat his fraudulent misrepresentation claim. To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege facts that plausibly suggest "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Wigod*, 673 F.3d at 569 (citations omitted). In addition, a plaintiff's reliance on any allegedly fraudulent statement must be justifiable. *Id.*; *see also Benson v. Stafford*, 941 N.E.2d 386, 405 (Ill. App. Ct. 2010)(stating that "[a]s part of its fraud claim, a plaintiff must allege that its reliance on the misrepresentation was justified")(citation omitted); *Minch v. George*, 917 N.E.2d 1169, 1178 (Ill. App. Ct. 2009)(stating that "[t]he party alleging fraud must show justifiable reliance on the

statements")(citation omitted).

In support of his argument that his fraudulent misrepresentation claim should survive despite the Integration Clause, Rao cites *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 968 (Ill. App. Ct. 2004), which provides that "[a]s a general rule, an integration clause will not preclude a plaintiff from relying upon extrinsic evidence in order to establish a cause of action for fraud." *Id.* at 968. However, the facts of *W.W. Vincent* are distinguishable from the facts presented in this case. In the first instance, the court in *W.W. Vincent* found that the alleged fraudulent representation made by the defendant in that case was actually included as part of the written agreement between the parties. *Id.* at 966-67. That is not the case here. Further, in *W.W. Vincent*, there was no language in the agreement between the parties whereby the plaintiff represented that it was not relying on any representations made by the defendant that were not found in the agreement. In contrast, in the instant action, the Integration Clause includes Rao's acknowledgment that, in signing the Offer Letter, he was "not relying on any other representation made by Abbott or its representatives about [his] employment." (D. Memo Ex. A). Under Illinois law, such an acknowledgment precludes a plaintiff from stating a valid fraudulent misrepresentation claim. *See Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000)(explaining that the function of a non-reliance clause is to "ensure[ ] that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication", and "holding that a written anti-reliance clause precludes any claim of

deceit by prior representations"); *see also Schrager v. Bailey*, 973 N.E.2d 932, 939 (Ill. App. Ct. 2012)(holding "that the integration/nonreliance clause in [an agreement] precluded [the plaintiff] from proving justifiable reliance, which was fatal to his cause of action for fraud"); *Benson*, 941 N.E.2d at 410 (holding "that plaintiffs cannot state a claim for affirmative fraud because they cannot show reasonable reliance on defendant's oral representations as a matter of law due to [a] nonreliance clause"). Therefore, Rao has failed to state a valid fraudulent misrepresentation claim.

### D.  Breach of Contract Claim (Count III)

Rao argues that he is has brought "a breach of oral contract claim stemming from DiRoma's oral representations."  (P Resp. 2).  To state a claim for breach of contract under Illinois law, a plaintiff must allege facts to plausibly suggest that there was "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach [by the defendant], and (6) damages."  *Wigod*, 673 F.3d at 560 (citations omitted).  As discussed above, Rao has not pled facts to plausibly suggest that the oral representations allegedly made by DiRoma on February 4, 2008, constituted an offer.  Thus, to the extent Rao is attempting to bring a breach of contract claim based upon DiRoma's alleged oral representations, Rao has failed to state a valid claim.  In addition, pursuant to the Integration Clause, the agreement between the parties did not include any representations made other than those made in writing.  As discussed above, Rao is

15

not entitled to engage in discovery based on his speculative assertion that some document may exist to support his claims, especially when Rao, as one of the parties to any such agreement, would or should already have knowledge of it. Based on the above, Rao has failed to state a valid breach of contract claim.


### E. Promissory Estoppel Claim (Count IV)

To state a valid promissory estoppel claim, a plaintiff must allege facts to plausibly suggest "that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Wigod*, 673 F.3d at 566. As discussed above, based on the Integration Clause, Rao has not plausibly suggested that he relied on DiRoma's alleged oral representations. Further, based on the Integration Clause, Rao has not plausibly suggested that his reliance on the alleged statements was expected and foreseeable by Abbott. Therefore, Rao has failed to state a valid promissory estoppel claim. Based on the above, Abbott's motion to dismiss Counts I, III, and IV is granted.


### II. Rao's Motion to Dismiss and Strike

Rao moves to dismiss Abbott's counterclaim and to strike Abbott's affirmative defenses and answers.

A.  Abbott's Counterclaim

Rao moves to dismiss Abbott's counterclaim.  In support of its motion, Rao argues that this court does not have supplemental jurisdiction over the breach of contract claims asserted in the counterclaim.  The amount in controversy in Abbott's counterclaim does not meet the jurisdictional requirements of 28 U.S.C. § 1332. However, Abbott alleges that the court has supplemental jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1367(a) (Section 1367(a)), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A state law claim forms "part of the same case or controversy" for the purposes of Article III when it "'derive[s] from a common nucleus of operative fact' with the original federal claims."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).  In general, "[a] loose factual connection" is sufficient to establish supplemental jurisdiction.  *Id.*  As discussed above, Abbott has asserted a counterclaim against Rao based on Rao's alleged failure to repay the Bonus, the Reimbursement, and attorneys' fees and costs that Abbott has expended trying to recover such money.  Such claims do share a loose factual connection to the retaliatory discharge claim asserted by Rao in Count II.  Not only do the claims all arise in the context of Rao's employment, but certain defenses Rao might assert to Abbott's counterclaim may relate to Rao's retaliatory discharge claim.  Since there is

17

a loose factual connection between the retaliatory discharge claim asserted by Rao in the first amended complaint and the breach of contract claims asserted by Abbott in the counterclaim, the court has subject matter jurisdiction over Abbott's counterclaim pursuant to Section 1367(a).

Rao also argues that even if the court has supplemental jurisdiction over Abbott's counterclaim, the court should decline to exercise supplemental jurisdiction as a matter of discretion. Pursuant to 28 U.S.C. § 1367(c)(4), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . in exceptional circumstances, there are [ ] compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The same claims filed in Abbott's counterclaim were filed by Abbott in the Georgia Action. Based on the its current posture and the issues raised, the Georgia Action is a compelling reason for this court to decline to exercise supplemental jurisdiction over Abbott's counterclaim. *See Che v. Massachusetts Bay Transp. Authority*, 342 F.3d 31, 37 (1st Cir. 2003)(indicating that in determining whether to exercise supplemental jurisdiction the court must consider "the totality of the circumstances," which include "giving consideration to such issues as 'comity, judicial economy, convenience, fairness and the like,'" and affirming a district court's decision declining to exercise supplemental jurisdiction over identical claims to those filed by a plaintiff in state court)(citation omitted); *see also R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 687 F.3d 362, 364 (7th Cir. 2012)(discussing "the rule, announced in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), that a federal district court may

abstain in favor of a state court in which a parallel suit is pending if exceptional circumstances warrant an abdication of federal jurisdiction"). Therefore, the court in its discretion declines to exercise supplemental over Abbott's counterclaim, and Abbott's counterclaim is dismissed without prejudice.

## B. Abbott's Affirmative Defenses and Answers

Rao also moves to strike Abbott's affirmative defenses and answers to the first amended complaint.

### 1. Affirmative Defenses

Rao argues that Abbott's affirmative defenses should be stricken as insufficient because they are merely a boilerplate recitation affirmative defenses without any factual allegations to support them. In determining whether to strike affirmative defenses, the court asks "(1) [whether] the matter [is] appropriately raised as an affirmative defense, (2) [whether] the defense [is] adequately pleaded under [Federal Rules of Civil Procedure] 8 and 9, and (3) [whether] the defendant set[s] forth a set of facts establishing [that] the defense [can] withstand a Rule 12(b)(6) challenge." *F.D.I.C. v. Vann*, 2013 WL 704478, at *3 (N.D. Ill. 2013)(citation omitted). When determining whether an affirmative defense is adequately pled under the Federal Rules of Civil Procedure, courts consider not only the affirmative defense, but also the content of the defendant's other pleadings. *See Green v. Kubota Tractor Corp.*, 2012 WL 1416465, at *3 (N.D. Ill. 2012)(stating that

19

affirmative defenses "need not be viewed in a vacuum," and finding that "[w]hen viewed alongside . . . defendant's responses in its answer [to the complaint], the affirmative defenses put the plaintiffs on notice of the events on which they are based"). Based on the totality of Abbott's answer and pleadings, the court finds that Abbott's affirmative defenses are sufficient. Therefore, Rao's motion is denied with respect to his request to strike Abbott's affirmative defenses.

### 2. Abbott's Answers

Rao argues that Abbott's answers should be stricken for Abbott's failure to comply with Federal Rule of Civil Procedure 8(b) (Rule 8(b)). Pursuant to Rule 8(b), a party responding to a pleading "must . . . admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P 8(1)(b). In addition, under Rule 8(b), "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5). After reviewing Abbott's answers to Rao's complaint in their entirety, the court finds that Abbott has complied with Rule 8(b) and that Rao cannot show any prejudice based on Abbott's answers to the first amended complaint. Therefore, Rao's motion is denied with respect to his request to strike Abbott's answers to the first amended complaint.

**CONCLUSION**

Based upon the foregoing analysis, Abbott's motion to dismiss Counts I, III, and IV of the first amended complaint is granted.  Rao's motion to dismiss and to strike is granted with respect to the dismissal of Abbott's counterclaim and denied with respect to the striking of Abbott's affirmative defenses and answer to the first amended complaint.


Samuel Der-Yeghiayan
United States District Court Judge

Dated:   April 24, 2013